# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CHANTEL LYNN GUILLOTTE**                    **CIVIL ACTION**

**VERSUS**                                    **NO.  18-1467**

**NANCY BERRYHILL, ACTING COMMISSIONER**       **SECTION: "G"(3)**
**OF THE SOCIAL SECURITY ADMINISTRATION**

## ORDER AND REASONS

Before the Court are Plaintiff Chantel Lynn Guillotte's ("Plaintiff") objections[1] to the Report and Recommendation of the United States Magistrate Judge assigned to the case.[2] Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of Defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner" or "Defendant"), denying her claim for supplemental security income ("SSI") under the Social Security Act (the "Act").[3] The parties filed cross-motions for summary judgment.[4] The Magistrate Judge recommended that Plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, the Administrative Law Judge's ("ALJ") decision denying Plaintiff's claim for SSI benefits be affirmed, and the case be dismissed with prejudice.[5] Plaintiff objects, arguing that the ALJ's decision was not supported by substantial evidence.[6]

---

[1] Rec. Doc. 24.

[2] Rec. Doc. 23.

[3] Rec. Doc. 1.

[4] Rec. Docs. 15, 21.

[5] Rec. Doc. 23 at 15.

[6] Rec. Doc. 24.

Having considered Plaintiff's objections, the Magistrate Judge's Report and Recommendation, the record, and the applicable law, for the following reasons, the Court will overrule Plaintiff's objections in part, sustain Plaintiff's objections in part, adopt the Report and Recommendation in part, reject the Report and Recommendation, and remand this action to the ALJ for additional proceedings consistent with this opinion.

## I. Background

### A.   *Procedural History*

Plaintiff filed an application for SSI on February 25, 2013, alleging a disability onset date of July 1, 1992.[7] Plaintiff alleged disability due to bipolar disorder/chemical imbalance/depression, behavior disorder, and schizophrenia.[8] After Plaintiff's claim was denied at the agency level, Plaintiff requested a hearing before an ALJ, which was held on February 9, 2015.[9] On April 20, 2015, the ALJ issued a decision denying Plaintiff's claim because she found that Plaintiff was not disabled.[10]

Plaintiff filed an appeal, and on July 27, 2016, the Appeals Council remanded the case to the ALJ for consideration of new evidence.[11] Specifically, the evidence consisted of an MRI of the lumbar spine performed in April 2015 and a nerve conduction study performed in March 2015.[12]

---

[7] Adm. Rec. at 212.

[8] *Id.*

[9] *Id.* at 127–68.

[10] *Id.* at 226–36.

[11] *Id.* at 241–44.

[12] *Id.* at 243.

The Appeals Council stated that, if warranted, the ALJ should "obtain additional evidence concerning [Plaintiff's] physical impairments" including "a consultative examination and medical source statements about what [Plaintiff] can still do despite the impairments."[13]

The ALJ held a second hearing on November 4, 2016.[14] Plaintiff and a vocational expert testified at the hearing.[15] The ALJ issued an opinion on March 27, 2017, in which she incorporated the new evidence, and yet, she still found Plaintiff was not disabled.[16] The ALJ analyzed Plaintiff's claim pursuant to the five-step sequential evaluation process.[17] At step one, the ALJ concluded

---

[13] *Id.* at 243.

[14] *Id.* at 169–210.

[15] *Id.*

[16] *Id.* at 11–24.

[17] The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. *Id.* §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. *Id.* §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. *Id.* §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. *Id.* §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. *Id.* § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969.

that Plaintiff had not engaged in substantial gainful activity since February 25, 2013, the application date.[18] At step two, the ALJ concluded that Plaintiff has the following severe impairments: "mood disorder; anxiety disorder; panic disorder; attention deficit hyperactivity disorder; posttraumatic stress disorder; moderate carpal tunnel syndrome of the right wrist; low average to borderline intellectual functioning; cervical spondylosis; and lumbar degenerative disc disease."[19] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments under the regulations.[20]

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a range of light work except that she can never climb ladders, ropes or scaffolds but can occasionally climb ramps and stairs; can occasionally balance, stoop, crouch, kneel, and crawl; cannot work with moving and/or dangerous machinery; cannot work at unprotected heights; and cannot engage in commercial driving.[21] The ALJ determined that Plaintiff is limited to unskilled work that involves routine, repetitive tasks and low stress work such as work that does not involve strict production quotas or fast-paced work.[22] Furthermore, the ALJ found that Plaintiff cannot have direct contact with the public but can have occasional and superficial interaction with

---

[18] Adm. Rec. at 13.

[19] *Id.*

[20] *Id.* at 14.

[21] *Id.* at 19.

[22] *Id.*

supervisors and co-workers.[23] The ALJ added that due to Plaintiff's moderate carpal tunnel syndrome, Plaintiff is able to use her upper extremities for frequent gross and fine manipulation (handling and fingering).[24]

At step four, the ALJ also found that Plaintiff had no past relevant work.[25] At step five, the ALJ determined that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.[26] Specifically, the ALJ found that Plaintiff was capable of performing work as a housekeeper, stock clerk/order filler, and inspector.[27] Therefore, the ALJ determined that Plaintiff was not disabled since February 25, 2013, the date the application was filed.[28]

Plaintiff requested review by the Appeals Council. The ALJ's decision became the final decision of the Commissioner for purposes of this Court's review after the Appeals Council denied review on December 15, 2017.[29] On February 13, 2018, Plaintiff filed a complaint seeking judicial review pursuant to Section 405(g) of the Act.[30] This matter was referred to a United States

---

[23] *Id.*

[24] *Id.*

[25] *Id.* at 23.

[26] *Id.*

[27] *Id.* at 24.

[28] *Id.*

[29] *Id.* at 1–6.

[30] Rec. Doc. 1.

Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B). On May 22, 2018, the Commissioner answered the complaint.[31]

On July 9, 2018, Plaintiff filed a motion for summary judgment.[32] In the motion, Plaintiff argued that substantial evidence did not support the following: the ALJ's RFC determination as it related to her mental limitations, the ALJ's rejection of the opinion of Plaintiff's treating psychiatrist, Melanie Vega, M.D., and the ALJ's failure to weigh the opinion of the consultative examiner, William Fowler, Ph.D.[33] Plaintiff also argued that substantial evidence did not support the ALJ's assessment of Plaintiff's physical limitations because there was no physical opinion evidence in the record.[34] On September 19, 2018, the Commissioner filed a cross motion for summary judgment, arguing that substantial evidence supported the ALJ's decision.[35]

**B.      *The Magistrate Judge's Report and Recommendation***

On December 5, 2018, the Magistrate Judge recommended that Plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, the ALJ's decision denying Plaintiff's claim for SSI benefits be affirmed, and the case be dismissed with prejudice.[36] First, the Magistrate Judge found that substantial evidence supported the ALJ's RFC determination as it related to Plaintiff's mental limitations and her rejection of the opinion of

---

[31] Rec. Doc. 11.

[32] Rec. Doc. 15.

[33] Rec. Doc. 15-2 at 4–10.

[34] *Id*. at 10–14.

[35] Rec. Doc. 21.

[36] Rec. Doc. 23 at 15.

Dr. Vega, Plaintiff's treating psychiatrist.[37] The Magistrate Judge noted that Dr. Vega completed a Mental Impairment Questionnaire on April 2, 2015, after treating Plaintiff on two occasions, diagnosing Plaintiff with bipolar mood disorder, panic disorder, generalized anxiety disorder, and PTSD, and finding that Plaintiff had extreme loss of mental functioning.[38] The Magistrate Judge found that the ALJ had good cause to afford Dr. Vega's opinion little weight because Dr. Vega's clinical findings did not reflect the extreme loss of mental functioning that Dr. Vega described in the questionnaire.[39] The Magistrate Judge stated that "several and sporadic references to an anxious mood do not diminish [Dr.] Vega's and other physician's observations throughout the record that plaintiff 'has a normal mood and affect. Her behavior is normal. Judgment and thought content normal.'"[40] Furthermore, the Magistrate Judge found that these observations directly contradict Dr. Vega's claims that Plaintiff had a complete loss of the ability to function appropriately with others.[41] Therefore, the Magistrate Judge determined that the ALJ was within her discretion to resolve this conflict in the evidence and reject Dr. Vega's finding that Plaintiff had extreme loss of mental functioning.[42]

---

[37] *Id.* at 6–12.

[38] *Id.* at 6 (citing Adm. Rec. at 940–46).

[39] *Id.* at 8 (citing Adm. Rec. at 1269, 1287, 1346, 1351).

[40] *Id.* at 10 (quoting Adm. Rec. at 979, 1287, 1269, 1346, 1351, 1518, 1529).

[41] *Id.*

[42] *Id.*

The Magistrate Judge also found Plaintiff's argument that the ALJ failed to weigh the opinion of the consultative examiner Dr. Fowler unavailing.[43] Although the ALJ did not explicitly assign a level of "weight" to Dr. Fowler's opinion, the Magistrate Judge determined that the ALJ gave due consideration to Dr. Fowler's report.[44] The Magistrate Judge stated that the ALJ fully incorporated Dr. Fowler's examination into the RFC determination by finding that Plaintiff could not perform work that involved strict quotas, direct contact with the public, more than low stress, or more than occasional interaction with supervisors and co-workers.[45] Therefore, even assuming that the ALJ erred by failing to state the specific "weight" she afforded to Dr. Fowler's opinion, the Magistrate Judge found that Plaintiff had not shown that she was prejudiced by the absence of such an articulation.[46]

Next, the Magistrate Judge found that substantial evidence supported the ALJ's assessment of Plaintiff's physical limitations.[47] The Magistrate Judge found Plaintiff's argument that the ALJ erred by failing to order a consultative examination unavailing because "the ALJ's RFC assessment is not restricted to merely selecting and endorsing an existing medical opinion."[48] Contrary to Plaintiff's assertion that there was no evidence in the record regarding Plaintiff's level of physical functioning, the Magistrate Judge found numerous medical examinations containing

---

[43] *Id*. at 11.

[44] *Id*.

[45] *Id*. at 12.

[46] *Id*.

[47] *Id*.

[48] *Id*. at 13.

physical clinical findings.[49] Specifically, the Magistrate Judge noted that on February 19, 2016, following an examination for lumbosacural radiculopathy, Dr. Casey Murphy observed full range of motion and normal neurological functioning, including normal extremity reflexes and normal strength, despite some tenderness and swelling in Plaintiff's sacroiliac joint.[50]

Similarly, on August 23, 2015, following an examination for pelvic pain, Dr. Thomas Falterman observed general full range of motion, and a nurse practitioner also observed a general full range of motion on April 8, 2015.[51] Further, contrary to Plaintiff's testimony that she was unable to place and remove a plastic ring for incontinence issues because of muscle spasms, numbness, and locking up in her hands and legs, the Magistrate Judge noted that Plaintiff needed help with her personal care in October 2016 because she had been involved in a car accident and there was no evidence those symptoms persisted long enough to satisfy the one-year duration requirement.[52] Therefore, the Magistrate Judge determined that the record contains sufficient evidence to demonstrate that Plaintiff's symptoms "did not raise the requisite suspicion to prompt the expenditure of government resources to order a consultative examination."[53]

Finally, the Magistrate Judge found Plaintiff's argument that the ALJ did not comply with the Appeals Council's remand order unavailing because the Appeals Council instructed the ALJ

---

[49] *Id*. (citing Adm. Rec. at 979, 1167, 1170, 1118).

[50] *Id*. (citing Adm. Rec. at 1167, 1169, 1170).

[51] *Id*. at 13–14 (citing Adm. Rec. at 979, 1118).

[52] *Id*. at 14 (citing Adm. Rec. at 181, 192).

[53] *Id*. at 14 (citing Adm. Rec. at 181, 192, 797, 1118, 1167, 1170).

to order a consultative examination "if warranted and available."[54] Accordingly, the Magistrate Judge concluded that the Appeals Council did not mandate a consultative examination, and the ALJ exercised her discretion in declining to order one.[55] For these reasons, the Magistrate Judge recommended that Plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, the ALJ's decision denying Plaintiff's claim for SSI benefits be affirmed, and the case be dismissed with prejudice.[56]

## II. Objections

### A. Plaintiff's Objections

Plaintiff timely filed objections to the Magistrate Judge's Report and Recommendation.[57] First, Plaintiff asserts that "[t]he Magistrate Judge's finding that the ALJ properly assessed the opinion of Plaintiff's treating physician should be rejected, as the ALJ did not provide reasons supported by the evidence for the weight accorded."[58]

Next, Plaintiff argues that the Court should reject the Magistrate Judge's finding that the ALJ was entitled to rely on the clinical findings made during various physical examinations to make an RFC determination.[59] Plaintiff contends that "[t]he ALJ is not required to make an RFC finding which is a carbon copy of any one medical opinion, but generally, an RFC must have some

---

[54] *Id*. at 15 (quoting Adm. Rec. at 243).

[55] *Id*.

[56] *Id.*

[57] Rec. Doc. 24.

[58] *Id*. at 1.

[59] *Id*.

medical opinion support as a functional base."[60] Plaintiff asserts that the RFC determination made "without any medical support is essentially the ALJ substituting her own assessment of the evidence for that of a medical source."[61] Furthermore, Plaintiff argues that the ALJ cannot independently determine Plaintiff's RFC without some evidence of the effect of her conditions on her ability to work.[62] In this case, Plaintiff contends that the only physical examination evidence in the record does not contain a functional evaluation.[63] Therefore, Plaintiff contends that there is not substantial evidence in the record to support the ALJ's RFC determination.[64]

Plaintiff contends that the Fifth Circuit's decision in *Taylor v. Astrue* illustrates a rare example of a case where an ALJ can make an RFC determination without a medical opinion.[65] Plaintiff notes that in *Taylor*, the plaintiff's MRIs were normal, other objective testing was unremarkable, and a doctor found no anatomical reason for the plaintiff's pain.[66] Plaintiff asserts that this case is distinguishable from *Taylor* because an MRI of Plaintiff's back revealed bulging and moderate foraminal narrowing with some desiccation of the L1–L2 disc, which impacted the right ventral thecal sac.[67] Plaintiff notes that her cervical spine is also affected with spondylosis at

---

[60] *Id*. at 2.

[61] *Id*. (citing 20 C.F.R. § 404.1519a; *Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2012); *Ware v. Schweiker*, 651 F.2d 408, 414 (5th Cir. 1981)).

[62] *Id*. at 3 (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)).

[63] *Id*.

[64] *Id*.

[65] *Id*. (citing 706 F.3d 600, 602–03 (5th Cir. 2012)).

[66] *Id*.

[67] *Id*. at 3–4 (citing Adm. Rec. at 1171).

11

C3–C4 and C4–C5, with further narrowing at C4–C5.[68] Further, Plaintiff notes that some desiccation was found in the thoracic spine at T6–T7 and T7–T8.[69] Plaintiff argues that these findings were enough to warrant some medical opinion on the effect of these conditions on her ability to work.[70] Plaintiff argues that the ALJ failed to properly develop the record, and these errors warrant remand of the case to the ALJ for additional administrative proceedings.[71]

## B. The Commissioner's Response

The Commissioner did not file a brief in opposition to Plaintiff's objections despite receiving electronic notice of the filing.

## III. Standard of Review

## A. Review of the Magistrate Judge's Report and Recommendation

In accordance with Local Rule 73.2, this case was referred to a Magistrate Judge to provide a Report and Recommendation. A district judge "may accept, reject, or modify the recommended disposition" of a magistrate judge on a dispositive matter.[72] The district judge must "determine *de novo* any part of the [Report and Recommendation] that has been properly objected to."[73] A

---

[68] *Id*. at 4 (citing Adm. Rec. at 1171).

[69] *Id*. (citing Adm. Rec. at 1171).

[70] *Id*. (citing *Ripley*, 67 F.3d at 557).

[71] *Id*.

[72] Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

[73] *Id.*

district court's review is limited to plain error of parts of the report which are not properly objected to.[74]

## B. *Standard of Review of Commissioner's Final Decision on SSI Benefits*

Under 42 U.S.C. § 405(g) the district court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[75] Appellate review of the Commissioner's denial of SSI benefits is limited to determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence.[76] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[77] The Court must review the whole record to determine if such evidence exists.[78] However, the district court cannot "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's."[79] The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.[80] A court "weigh[s] four

---

[74] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

[75] 42 U.S.C. § 405(g).

[76] *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Waters v. Barnhart*, 276 F.3d 716, 716 (5th Cir. 2002); *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

[77] *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Perez*, 415 F.3d at 461; *Loza*, 219 F.3d at 393; *Villa*, 895 F.2d at 1021–22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)).

[78] *Singletary v. Bowen*, 798 F.2d 818, 822–23 (5th Cir. 1986).

[79] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[80] *See Arkansas v. Oklahoma*, 503 U.S. 91 (1992).

elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."[81]

The Court notes that both Plaintiff and the Commissioner moved for summary judgment. The standard of review applicable to such motions requires that a moving party establish that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law.[82] Under 42 U.S.C. § 405(g), however, this Court may examine only the pleadings and the record relied upon by the ALJ. Thus, there cannot generally be a disputed issue of fact before the Court in Social Security appeals.[83] Instead, "[t]he issue is whether the action of the Secretary is supported by the Record."[84] The Fifth Circuit has regularly allowed district courts to rule on Social Security disputes through the summary judgment procedure, when "the district court has adequately reviewed the record and based its judgment on a finding of substantial evidence in the administrative record."[85]

## IV. Law and Analysis

### A. Applicable Law to Qualification for SSI Benefits

---

[81] *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

[82] **Error! Main Document Only.**Fed. R. Civ. P. 56(c).

[83] ***Error! Main Document Only.****See Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981).

[84] ***Error! Main Document Only.****Id.* (citing *Igonia v. Califano*, 568 F.2d 1383, 1389 (D.C. Cir. 1977)).

[85] ***Error! Main Document Only.*** *Id.*; *see also, e.g., Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (setting forth both the summary judgment and substantial evidence standards of review).

To be considered disabled, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[86] The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.[87] The regulations include a five-step evaluation process for determining whether an impairment constitutes a disability, and the five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.[88] The claimant has the burden of proof under the first four parts of the inquiry, and if he successfully carries this burden, the burden shifts to the Commissioner at step five to show that the claimant is capable of engaging in alternative substantial gainful employment, which is available in the national economy.[89]

In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 25, 2013, the application date.[90] The ALJ determined that Plaintiff has the following severe impairments: "mood disorder; anxiety disorder; panic disorder; attention deficit hyperactivity disorder; posttraumatic stress disorder; moderate carpal tunnel syndrome of the right wrist; low average to borderline intellectual functioning; cervical spondylosis; and lumbar

---

[86] 42 U.S.C. § 423(d)(1)(A).

[87] 20 C.F.R. §§ 404.1501 to 404.1599 & Apps., §§ 416.901 to 416.998 (2008).

[88] *Id*. §§ 404.1520, 416.920; *Perez*, 415 F.3d at 461.

[89] *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.

[90] Adm. Rec. at 13.

degenerative disc disease."[91] The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments under the regulations.[92]

The ALJ determined that Plaintiff had the RFC to perform a range of light work except that she can never climb ladders, ropes or scaffolds but can occasionally climb ramps and stairs; can occasionally balance, stoop, crouch, kneel, and crawl; cannot work with moving and/or dangerous machinery; cannot work at unprotected heights; and cannot engage in commercial driving.[93] The ALJ determined that Plaintiff is limited to unskilled work that involves routine, repetitive tasks and to low stress work such as work that does not involve strict production quotas or fast-paced work.[94] Furthermore, the ALJ found that Plaintiff cannot have direct contact with the public but can have occasional and superficial interaction with supervisors and co-workers.[95] The ALJ added that due to Plaintiff's carpal tunnel syndrome, Plaintiff is able to use her upper extremities for frequent gross and fine manipulation (handling and fingering).[96]

The ALJ also found that Plaintiff had no past relevant work.[97] However, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that

---

[91] *Id.*

[92] *Id.* at 14.

[93] *Id.* at 19.

[94] *Id.*

[95] *Id.*

[96] *Id.*

[97] *Id.* at 23.

exist in significant numbers in the national economy that Plaintiff can perform.[98] Specifically, the ALJ found that Plaintiff was capable of performing work as a housekeeper, stock clerk/order filler, and inspector.[99] Therefore, the ALJ determined that Plaintiff was not disabled since February 25, 2013, the date the application was filed.[100] The Court may disturb that finding only if the ALJ lacked "substantial evidence" to support it.[101]

**B.** ***Does substantial evidence support the ALJ's RFC determination as to Plaintiff's mental limitations and her rejection of the opinion of Plaintiff's treating psychiatrist Dr. Melanie Vega?***

The Magistrate Judge found that substantial evidence supported the ALJ's RFC determination as to Plaintiff's mental limitations and her rejection of the opinion of Dr. Vega, Plaintiff's treating psychiatrist.[102] Plaintiff objects, arguing that "[t]he Magistrate Judge's finding that the ALJ properly assessed the opinion of Plaintiff's treating physician should be rejected, as the ALJ did not provide reasons supported by the evidence for the weight accorded."[103]

"The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability."[104] If the treating physician's opinion on the nature and severity of the impairment is consistent with other

---

[98] *Id.*

[99] *Id.* at 24.

[100] *Id.*

[101] *See Perez*, 415 F.3d at 461.

[102] Rec. Doc. 23 at 6–12.

[103] Rec. Doc. 24 at 1.

[104] *Newton,* 209 F.3d at 455 (citing *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir. 1994)).

substantial evidence and is supported by diagnostic techniques, the opinion should be given controlling weight.[105] The ALJ has the sole responsibility for determining the claimant's disability status and can reject or give less weight to the opinions of a treating physician for good cause.[106] An ALJ may give a treating physician's opinion less weight if the opinion is conclusory, unsupported by medical or diagnostic tests, or otherwise unsupported by evidence.[107] However, an ALJ is required to consider factors set forth in the Social Security regulations "before declining to give any weight to the opinions of the claimant's treating specialist."[108] Those factors include: "(1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician."[109] If the ALJ fails to conduct this analysis, reversal is only appropriate if the failure prejudiced the claimant.[110]

Dr. Vega completed a Mental Impairment Questionnaire on April 2, 2015, after treating Plaintiff on two occasions, diagnosing Plaintiff with bipolar mood disorder, panic disorder, generalized anxiety disorder, and PTSD, and finding that Plaintiff had extreme loss of mental

---

[105] *Id.*

[106] *Id.* at 455–56.

[107] *Id.* at 456.

[108] *Id.*

[109] *Id.* (citing 20 C.F.R. § 404.1527(c)(2)). *See also* 20 C.F.R. § 416.927(c) (applying the same factors to SSI claims.) 20 C.F.R. § 416.927 applies to claims filed before March 27, 2017. Plaintiff's application for SSI was filed on February 25, 2013.).

[110] *Brock v. Chater,* 84 F.3d 726, 729 (5th Cir. 1996).

functioning.[111] Dr. Vega opined that Plaintiff had "marked" limitations in her capabilities to maintain attention and concentration for extended periods; perform activities within a schedule, be punctual, and maintain regular attendance; work in coordination with or in proximity to others without being distracted; interact appropriately with the public; accept instruction from supervisors; and get along with co-workers.[112] In addition, Dr. Vega opined that Plaintiff had "moderate" limitations in her ability to remember locations and work-like procedures; understand, remember, and carry out simple instructions; and ability to make simple work-related decisions.[113] On March 31, 2016, Vega filled out a similar form with nearly the same statements, adding that plaintiff completely lacked the ability to interact appropriately with the general public or get along with co-workers without distracting them or demonstrating extreme behaviors.[114]

The ALJ afforded little weight to Dr. Vega's opinion, noting that the first questionnaire was completed after only two examinations.[115] The ALJ noted that Dr. Vega's assessment of Plaintiff's limitations was more severe than the limitations Plaintiff herself indicated.[116] The ALJ further noted that Dr. Vega's statements contradicted her own objective clinical findings as well as other evidence on the record.[117] The ALJ reasoned that if Plaintiff's restrictions were as severe

---

[111] Adm. Rec. at 940–46.

[112] *Id.* at 942.

[113] *Id.*

[114] *Id.* at 1012–15.

[115] *Id.* at 22–23.

[116] *Id.* at 23.

[117] *Id.* at 24.

as Dr. Vega described it would be "reasonable to assume that some other doctor would have noted this."[118] Instead, the ALJ found that the record was "replete with references to [Plaintiff] having a normal mood and affect."[119]

The ALJ at least implicitly considered the factors set forth in the Social Security regulations in declining to give the opinion of Dr. Vega controlling weight. Dr. Vega's clinical findings did not reflect the extreme loss of mental functioning that Dr. Vega described in the questionnaire.[120] For example, on numerous visits between June 2015 and July 2016, Dr. Vega reported that Plaintiff demonstrated fair judgment, fair insight, and unremarkable thought content.[121] Furthermore, in April 2015, October 2015, and November 2015, other physicians noted that Plaintiff had a "normal mood and affect," displayed normal behavior, and had normal judgment and thought content.[122] These observations contradict Dr. Vega's statement that Plaintiff had a limited capacity to maintain socially appropriate behavior.

As Plaintiff points out, Dr. Vega noted during numerous visits that Plaintiff displayed an anxious and depressed mood.[123] Nevertheless, the record as a whole supports the ALJ's finding that Dr. Vega's assessment of Plaintiff's mental limitations were inconsistent with the evidence. Therefore, the ALJ was within her discretion to resolve conflicts in the evidence and reject Dr.

---

[118] *Id.*

[119] *Id.*

[120] *Id.* at 1269, 1287, 1346, 1351.

[121] *Id.* at 1269, 1277, 1283, 1287, 1295, 1300, 1304, 1307, 1314, 1316, 1322, 1325, 1331, 1336, 1339, 1346, 1351.

[122] *Id.* at 979, 1518, 1529

[123] *Id.* at 1269, 1277, 1283, 1287, 1295, 1300, 1304, 1307, 1314, 1316, 1322, 1325, 1331, 1336, 1339, 1351.

Vega's finding that Plaintiff had extreme loss of mental functioning, and substantial evidence supported the RFC determination as it related to Plaintiff's mental limitations.[124] Accordingly, the Court adopts the Magistrate Judge's Report and Recommendation to the extent it recommends that the Court find substantial evidence supports the ALJ's RFC determination as to Plaintiff's mental limitations.

**C.    *Did substantial evidence support the ALJ's assessment of the Plaintiff's physical limitations?***

The Magistrate Judge found that substantial evidence supported the ALJ's assessment of Plaintiff's physical limitations.[125] Plaintiff objects, arguing that there is not substantial evidence to support the RFC determination because the only physical examination evidence in the record does not contain a functional evaluation.[126] Plaintiff argues that the ALJ cannot independently determine Plaintiff's RFC without some evidence of the effect of her conditions on her ability to work.[127]

"Under the regulations and [Fifth Circuit] case law, the determination of residual functional capacity is the sole responsibility of the ALJ."[128] An RFC determination "is not a

---

[124] Plaintiff does not object to the Magistrate Judge's finding that the ALJ gave due consideration to the report of the consultative examiner, Dr. Fowler. The Magistrate Judge stated that the ALJ fully incorporated Dr. Fowler's examination into the RFC determination by finding that Plaintiff could not perform work that involved strict quotas, direct contact with the public, more than low stress, or more than occasional interaction with supervisors and co-workers. Therefore, even assuming that the ALJ erred by failing to state the specific "weight" she afforded to Dr. Fowler's opinion, the Magistrate Judge found that Plaintiff had not shown that she was prejudiced by the absence of such an articulation. Reviewing for plain error, and finding none, the Court adopts this determination.

[125] Rec. Doc. 23 at 12–15.

[126] Rec. Doc. 24 at 3.

[127] *Id*. (citing *Ripley*, 67 F.3d at 557).

[128] *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012) (internal citations omitted).

medical opinion."[129] Instead, "[a]n RFC determination is essentially a conclusion about what a claimant may still do despite his [or her] impairments."[130] "A consultative examination at government expense may be required if the record establishes that such an examination is necessary to enable the [ALJ] to make the disability decision."[131] "The decision to require such an examination is discretionary, but limited where the claimant raises the requisite suspicion that such an examination is necessary for the ALJ to discharge his duty of full inquiry."[132]

In *Ripley v. Chater*, the Fifth Circuit recognized that as a general rule, an "ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing."[133] "The absence of such a statement, however, does not, in itself, make the record incomplete."[134] Where no medical statement describing the plaintiff's ability to work has been provided, the Fifth Circuit instructs that a reviewing court must focus "upon whether the decision of the ALJ is supported by substantial evidence in the existing record."[135] In *Ripley*, the Fifth Circuit found that the ALJ's determination that the plaintiff was capable of performing sedentary work was not supported by substantial evidence because although the record established that the plaintiff had a back condition that required surgery, it "did not clearly establish [] the effect [the

---

[129] *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003) (citing 20 C.F.R. §§ 416.946, 416.927(e)).

[130] *Holifield v. Astrue*, 402 F. App'x 24 (5th Cir. 2010) (citing *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005)).

[131] *Haywood v. Sullivan*, 888 F.2d 1463, 1472 (5th Cir. 1989) (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977) (per curiam)).

[132] *Id.*

[133] 67 F.3d 552, 557 (5th Cir. 1995).

[134] *Id.*

[135] *Id.*

plaintiff's] condition had on his ability to work."[136] Therefore, on remand, the Fifth Circuit instructed the ALJ to obtain a report from a treating physician regarding the effects of the plaintiff's back condition on his ability to work.[137]

In *Taylor v. Astrue*, the Fifth Circuit rejected the plaintiff's argument that substantial evidence did not support the ALJ's RFC determination.[138] The Fifth Circuit found that the medical records failed to corroborate the plaintiff's complaints of pain, noting that MRIs were normal, an EEG test was normal, and neurophysiological studies were "unremarkable."[139] Furthermore, one of the plaintiff's doctors remarked that "[i]t appears that the patient does not have any anatomical reason [for] his pain."[140] Therefore, the Fifth Circuit concluded that substantial evidence supported the ALJ's determination and that the ALJ properly "used the medical information provided by [the plaintiff] to determine the plaintiff's residual functional capacity for work."[141]

Plaintiff asserts that this case is distinguishable from *Taylor* because an MRI of Plaintiff's back conducted in February 2016 revealed abnormalities in the cervical, thoracic, and lumbar spine.[142] Plaintiff argues that these findings were enough to warrant some medical opinion on the effect of these conditions on her ability to work.[143]

---

[136] *Id.*

[137] *Id.* at 557–58.

[138] 706 F.3d at 603.

[139] *Id.*

[140] *Id.*

[141] *Id.* at 602.

[142] Rec. Doc. 24 at 3–4 (citing Adm. Rec. at 1171).

[143] *Id.* (citing *Ripley*, 67 F.3d at 557).

The February 2016 MRI showed bulging and moderate foraminal narrowing with secondary moderate foraminal narrowing and superimposed mild right paracentral protrusion with mild focal impression on the right ventral sac at level L4–L5 of Plaintiff's back.[144] Mild desiccation of the L1–L2 level was also noted.[145] Mild posterior spondylosis was found at C3–C4 and C4–C5, with moderate right foraminal narrowing at C4-C5.[146] Further, mild dessication was found at levels T6–T7 and T7–T8, with incidental vertebral hemangioma at T7.[147]

The ALJ characterized the findings from the 2016 MRI as "mild."[148] The ALJ also noted that x-rays of Plaintiff's spine performed in June 2016 and July 2016 showed "mild findings."[149] The ALJ also evaluated an MRI performed on December 30, 2014, which showed mild posterior spondylosis at C3-C4 and mild posterior spondylosis with right uncinate hypertrophy and moderate right foraminal stenosis at C4-C5.[150]

Both the ALJ's opinion and the Magistrate Judge's Report and Recommendation focus on record evidence showing some displays of normal musculoskeletal and neurological functioning during the relevant time period.[151] Despite some normal clinical findings, the medical records also show that Plaintiff frequently complained of neck pain and bilateral numbness in both arms

---

[144] Adm. Rec. at 1171.

[145] *Id.*

[146] *Id.*

[147] *Id.*

[148] *Id.* at 17.

[149] *Id.*

[150] *Id.* at 21.

[151] *Id.*; Rec. Doc. 23 at 13 (citing Adm. Rec. at 979, 1118, 1167, 1169, 1170).

beginning on late 2014, and low back pain radiating into both legs beginning early 2015.[152] A nerve conduction study and EMG of Plaintiff's bilateral lower extremities conducted on March 17, 2015, was consistent with acute chronic bilateral lumbosacral radiculopathy.[153] Plaintiff was also diagnosed with right sacroiliac joint dysfunction on February 19, 2016.[154] Furthermore, the MRIs show that Plaintiff's back condition had deteriorated, at least to some degree between the December 2014 and the February 2016 MRIs.

In *Ripley*, the Fifth Circuit found that the ALJ erred in failing to order a report regarding the effects of the plaintiff's back condition on the plaintiff's ability to work.[155] Similarly, here, there is no medical evidence in the record showing the effects of Plaintiff's back conditions and carpal tunnel syndrome on her ability to work. "The absence of such a statement, however, does not, in itself, make the record incomplete."[156] Instead, the Court must focus "upon whether the decision of the ALJ is supported by substantial evidence in the existing record."[157]

This case is distinguishable from *Taylor v. Astrue*, where the Fifth Circuit upheld a RFC determination without requiring a functional capacity evaluation because there the medical records completely failed to corroborate the plaintiff's complaints of pain, as the plaintiff's MRIs were

---

[152] Adm. Rec. at 630, 683, 973, 1028, 1059, 1073, 1082, 1085, 1101, 1166, 1169, 1389, 1390, 1439, 1459, 1489, 1552.

[153] *Id*. at 967.

[154] *Id*. at 1169–72.

[155] 67 F.3d at 557.

[156] *Id.*

[157] *Id.*

normal, an EEG test was normal, and neurophysiological studies were "unremarkable."[158] Here, an MRI of Plaintiff's back conducted in February 2016 revealed abnormalities in the cervical, thoracic, and lumbar spine.[159] A nerve conduction study and EMG of Plaintiff's bilateral lower extremities conducted on March 17, 2015, was consistent with acute chronic bilateral lumbosacral radiculopathy.[160] Although there is some evidence of normal musculoskeletal and neurological functioning during the relevant time period, there is also objective medical evidence supporting the diagnoses of moderate carpal tunnel syndrome of the right wrist, cervical spondylosis, and lumbar degenerative disc disease. Furthermore, there is no medical evidence showing the effect of these conditions on Plaintiff's ability to work. Therefore, the Court concludes that the decision of the ALJ is not supported by substantial evidence in the existing record. Accordingly, a remand in this case is appropriate. Upon remand, the ALJ should request clarification from Plaintiff's treating physician and may request a supplemental opinion from the consultative examiner, or both.[161] The evidence should include a functional capacity evaluation or other statement of the effects of Plaintiff's condition on her ability to work.[162]

## V. Conclusion

For the foregoing reasons, the Court finds that the ALJ was within her discretion to resolve conflicts in the evidence and reject Dr. Vega's finding that Plaintiff had extreme loss of mental

---

[158] 706 F.3d at 603.

[159] Adm. Rec. at 1171.

[160] *Id*. at 967.

[161] *See Williams v. Astrue*, 355 F. App'x 828, 832 (5th Cir. 2009).

[162] *Id.*

functioning, and substantial evidence supported the RFC determination as it related to Plaintiff's mental limitations. Accordingly, the Court adopts the Magistrate Judge's Report and Recommendation to the extent it recommends that the Court find substantial evidence supports the ALJ's RFC determination as to Plaintiff's mental limitations. However, the Court finds that the ALJ's RFC determination as to Plaintiff's physical limitations was not based on substantial evidence. Accordingly,

**IT IS HEREBY ORDERED** that the Court **OVERRULES IN PART** Plaintiff's objections related to the assessment of Plaintiff's mental limitations and **SUSTAINS IN PART** Plaintiff's objections related to the assessment of Plaintiff's physical limitations;

**IT IS FURTHER ORDERED** that the Court **ADOPTS IN PART** the Magistrate Judge's recommendation as to Plaintiff's mental limitations and **REJECTS IN PART** the Magistrate Judge's recommendation as to Plaintiff's physical limitations;

**IT IS FURTHER ORDERED** that the case is **REMANDED** to the ALJ for additional proceedings consistent with this opinion.

**NEW ORLEANS, LOUISIANA,** this 13th day of February, 2019.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**